IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

DAVID ASHLEY                                                                              PLAINTIFF

v.                                                           CIVIL ACTION NO.: 1:10-CV-00185-GHD-DAS

METRO FORD AUTOMOBILE SALES, INC.                                  DEFENDANT

MEMORANDUM OPINION DENYING DEFENDANT'S RULE 37 MOTION TO DISMISS
AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Presently before this Court are two motions filed by Defendant, Metro Ford Automobile Sales, Inc. ("Defendant" or "Metro Ford"): a motion for summary judgment [23] and a motion to dismiss [28] pursuant to Rule 37(b)(2)(A)(v) of the Federal Rules of Civil Procedure. After due consideration, the Court finds the motion to dismiss [28] should be denied and the motion for summary judgment [23] should be granted.

*A. Factual and Procedural Background*

Plaintiff David Ashley ("Plaintiff"), a Caucasian male, brings this reverse race discrimination claim under the auspices of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1), invoking the Court's federal question jurisdiction under 28 U.S.C. § 1331. Plaintiff alleges in his complaint [1] that he was employed as a sales representative of Defendant from June 1, 2009 until September 2, 2009, when he was wrongfully terminated due to a conflict with a supervisor of a different race. Plaintiff further alleges that other sales representatives similarly situated were not terminated for similar disputes. It is undisputed that Plaintiff was discharged due to an incident with a customer. In dispute are the exact words spoken in this exchange.

Plaintiff filed a timely EEOC charge alleging race and religious discrimination and upon receipt of the EEOC's statutory notice of the right to sue under 42 U.S.C. §§ 2000e-5(a) and 2000e-5(e), timely filed this suit in federal court, solely alleging race discrimination. He seeks actual and punitive damages. On July 25, 2011, Defendant filed a motion to compel and/or for extension of the discovery deadline [20] wherein it requested the Court to compel Plaintiff to produce information concerning his income tax records and contact information for Plaintiff's ex-wife pursuant to Defendant's discovery request for production. On August 15, 2011, the Court entered an Order [25] granting the motion to compel and extending the discovery deadlines to August 31, 2011. Also on August 15, 2011, Defendant filed a motion for summary judgment [23], wherein it attached excerpts of Plaintiff's deposition and the Affidavit of Myra Bowens, the customer involved in the alleged incident. Plaintiff failed to respond to the motion for summary judgment. On September 8, 2011, Defendant filed a motion to dismiss [28] pursuant to Rule 37(b)(2)(A)(v) of the Federal Rules of Civil Procedure claiming Plaintiff had failed to comply with the Court's Order [26] compelling Plaintiff to produce the requested discovery. Plaintiff filed its response [31] to the motion to dismiss on September 19, 2011. Defendant filed its reply [32] on September 20, 2011.

*B. Rule 37(b)(2)(A)(v) Motion to Dismiss*

Federal Rule of Civil Procedure 37 provides the following pertinent provision:

(b) Failure to comply with a Court Order.

. . .

(2) Sanctions in the District Where the Action Is Pending.

(A) For Not Obeying a Discovery Order. If a party or a party's officer, director, or managing agent-or a witness . . . -fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court

where the action is pending may issue further just orders. They may include the following:

. . .

(v) dismissing the action or proceeding in whole or in part; . . . .

FED. R. CIV. P. 37(b)(2)(A)(v).

Defendant claims in its motion to dismiss that Plaintiff's claims should be dismissed for failure to comply with the Court's Order to compel the documents requested in discovery. Plaintiff responded that some information had been difficult to locate due to his recent divorce, but that on September 9, 2011, he had produced all requested information that was in his possession. The Court acknowledges that Plaintiff's production of documents to Defendant was not timely given the August 30, 2011 deadline. However, the Court is of the opinion that the imposition of Rule 37 sanctions would not be appropriate in this case. Accordingly, the Court denies Defendant's Rule 37 motion to dismiss [28].

### C. Motion for Summary Judgment

#### i. Summary Judgment Standard

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008). The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322, 106 S. Ct. 2548.

The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323, 106 S. Ct. 2548. Under Rule 56(a) of the Federal Rules of Civil Procedure, the burden then shifts to the non-movant to "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " *Id.* at 324, 106 S. Ct. 2548; *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001); *Willis v. Roche Biomedical Labs., Inc.*, 61 F.3d 313, 315 (5th Cir. 1995).

Summary judgment may not be granted merely because the nonmovant failed to respond to the motion for summary judgment. *Albanil v. Coast 2 Coast, Inc.*, No. 10-20424, 2011 WL 4840967, at *18 n.21 (5th Cir. Oct. 13, 2011) (quoting *John v. La.*, 757 F.2d 698, 709 (5th Cir. 1985)).[1] However, "to survive a motion for summary judgment, the non-moving party must present sufficient evidence to support the elements of its prima facie case." *Stewart v. City of Bryan Pub. Works*, 121 F. App'x 40 (5th Cir. 2005) (referring to the plaintiff's failure to respond to motion for summary judgment on his Title VII race discrimination claim); *see Celotex Corp.*, 477 U.S. at 321–23, 106 S. Ct. 2548. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient" to preclude summary judgment; "there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1985).

### ii. Title VII Race Discrimination Standard

---

[1] Plaintiff's counsel should note, however, that Plaintiff's failure to respond to the motion for summary judgment was in violation of Rule 7 of the Uniform Local Rules of the Northern and Southern Districts of Mississippi, which provides in pertinent part: "A response to a motion . . . must be filed of record. Within the time allowed for response, the opposing party must either respond to the motion or notify the court of its intent not to respond." UNIF. LOC. R. 7(b)(3)(A).

Plaintiff claims Defendant wrongfully terminated him due to his race in violation of Title VII. "The language of Title VII makes plain the purpose of Congress to assure equality of employment opportunities and to eliminate those discriminatory practices and devices which have fostered racially stratified job environments to the disadvantage of minority citizens." *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). An employer may not terminate an employee because of the employee's race. 42 U.S.C. § 2000e-2(a)(1). When there is no direct evidence of unlawful discrimination, as here, this Court is bound to follow the *McDonnell Douglas* framework to determine whether the plaintiff has a Title VII race discrimination claim. *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004).

Under *McDonnell Douglas*, to sustain a race discrimination claim under Title VII, the plaintiff must first establish a prima facie case of race discrimination. *McDonnell Douglas*, 411 U.S. at 792, 93 S. Ct. 1817; *Davis v. Dall. Area Rapid Transit*, 383 F.3d 309, 317 (5th Cir. 2004). The burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for terminating the plaintiff. *McDonnell Douglas*, 411 U.S. at 802, 93 S. Ct. 1817. Only then does the presumption of discrimination disappear and the burden shift back to the plaintiff to "offer sufficient evidence to create a genuine issue of material fact either (1) that [the employer's] reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that [the employer's] reason, while true, is only one of the reasons for its conduct, and another 'motivating factor' is [the employer's] protected characteristic (mixed-motives alternative)." *Rachid*, 376 F.3d at 312. Even in *McDonnell Douglas*'s burden-shifting framework, the ultimate burden remains with the plaintiff. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000) (quoting *Tex. Dep't of*

*Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981)). The Court will examine each element of the *McDonnell Douglas* framework in turn.

*1. Prima Facie Case of Race Discrimination*

Under *McDonnell Douglas*, Plaintiff must first make a prima facie case of race discrimination, which is to say, Plaintiff must demonstrate that he: "(1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group." *McCoy v. City of Shreveport*, 492 F.3d 551, 556–57 (5th Cir. 2007).

Neither party disputes that Plaintiff was in a protected group, qualified for the position at issue, or discharged. However, Defendant contends that Plaintiff has failed to satisfy the fourth prong of the test: "The plaintiff has no evidence that he was treated differently or less favorably than similarly situated fellow employees of another race." Def.'s Mem. Supp. MSJ [24] at 2; *see also* Def.'s MSJ [23] at 2. Thus, the Court will cabin its analysis of the prima facie element to the "similarly situated" prong.

The "similarly situated" prong is governed by the "nearly identical" standard, which provides that "in order for a plaintiff to show disparate treatment, she must demonstrate that the misconduct for which she was discharged was nearly identical to that engaged in by an employee not within her protected class whom the company retained." *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 221 (5th Cir. 2001) (citations omitted). The Fifth Circuit has explained what circumstances are not "nearly identical": "Employees with different supervisors, who work for different divisions of a company or who were the subject of adverse employment actions too remote in time from that taken against the plaintiff generally will not be deemed similarly

situated. Likewise, employees who have different work responsibilities or who are subjected to adverse employment action for dissimilar violations are not similarly situated." *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 259–60 (5th Cir. 2009) (citations omitted). The "nearly identical" standard is met when "the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories. And, critically, the plaintiff's conduct that drew the adverse employment decision must have been 'nearly identical' to that of the proffered comparator who allegedly drew dissimilar employment decisions." *Id.*; *see also Vaughn v. Woodforest Bank*, No. 11-60102, 2011 WL 6382033, at *4 (5th Cir. Dec. 21, 2011). However, the Fifth Circuit has also stated that the plaintiff "need only make a very minimal showing" to establish a prima facie case. *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 41 (5th Cir. 1996).

Because this Court is viewing this case at the summary judgment stage, it must view the evidence in the light most favorable to Plaintiff. Plaintiff alleges that he was terminated "due to a conflict with supervisor of different race[;] however, other sales representatives with similar ethnicity to the supervisor were not terminated for similar disputes" and that he "was treated differently and unfairly than other similarly situated employees because of his race and racial considerations." Pl.'s Compl. [1] at 2. Plaintiff testified in his deposition that an African-American sales associate, Hubert Miller, had had a heated dispute with another customer, during which time Miller was "cussing and hollering." Pl.'s Depo., attached as Exh. 1 to Def.'s MSJ [23-1], at 55, 82.[2] Plaintiff testified that Miller was merely reprimanded, not discharged, for his conduct. *Id.* at 56. Defendant contends that Miller's situation was not "nearly identical" to Plaintiff's situation. Miller and Plaintiff appear to have shared the same position, work

---

[2] Plaintiff stated he was not aware of any other employees of another race similarly situated who were treated more favorably than Plaintiff.

7

responsibilities, and supervisors at Metro Ford. However, Defendant contends that Miller's and Plaintiff's circumstances were not "nearly identical," and Plaintiff has failed to rebut this contention. Thus, Plaintiff's claim would not survive summary judgment based on his failure to establish a prima facie case of race discrimination. However, assuming, *arguendo*, that Plaintiff has established a prima facie case of race discrimination, the Court will move to the next step in the analysis.

### 2. Legitimate, Non-Discriminatory Reason for Termination

Assuming, *arguendo*, that Plaintiff has established a prima facie case of race discrimination, this Court will next examine whether Defendant has expressed a legitimate, non-discriminatory reason for firing Plaintiff. Defendant states the reason for Plaintiff's termination as follows: "The plaintiff offended a long-time Metro Ford customer by making a racially-offensive remark about members of her race 'not knowing about Jesus.' " Def.'s Mem. Supp. MSJ [24] at 2; *see also* Def.'s MSJ [23] at 2. Defendant maintains throughout its motion and memorandum in support that Plaintiff was terminated "for his offensive comments to one of Metro Ford's longstanding customers." *See* Def.'s Mem. Supp. MSJ [24] at 2, 7–9. The exact words exchanged by Plaintiff and the customer are in dispute.

In Plaintiff's deposition taken on July 6, 2011, he relates the incident as follows:

> [A] lady had bought . . . a black Lincoln, a real nice car. . . . I got on the golf cart and I was going to the back to take care of something in the service department and she was standing out there and I just asked her could I help her. And she said, yeah, I need somebody to put this tag on this car right here. And I looked, I said that's a pretty car. I said, that [sic] kind of tag is that, is that a Jesus tag. She said, no, it's just a Lincoln tag. And I said, well, that's a nice tag like that. And I said, let me get the service guy for you. And that was it. And I got on my cart and left.

Pl.'s Depo. [23–1] at 49.

The customer involved, Myra Bowens, relates the incident in her affidavit as follows:

> On August 31, 2009, my husband, Michael Bowens, purchased a vehicle from Metro Ford in Tupelo, Lee County, Mississippi. On that same date, I went to Metro Ford to have a license plate and tag for the front bumper affixed to this vehicle. While at Metro Ford, I had a conversation with [Plaintiff]. . . . [While headed to the lobby area], I was stopped by [Plaintiff] who asked me what kind of tag I got for my car. I told him that I purchased a stainless steel tag with the Lincoln emblem. He said "you should have got one with Jesus on it." I replied "I always have Him (Him meaning Jesus) in the car with me so I didn't bother to put Him on the tag." [Plaintiff] then replied, "so many black people don't know about Jesus." I could not believe what I was hearing. I replied "excuse me" in a not so pleasant voice. Perhaps [Plaintiff] could tell by my tone that I was not so pleased with his statement so he then said "I mean so many people don't know about Jesus.". . . . [I then] got into my vehicle and called my husband. By this time I was in tears. . . . He told me to call Beyron [Erby, Metro Ford's general manager] before leaving the lot to let him know what had just taken place. . . . Beyron continuously apologized and . . . assured me that he would take care of the situation upon his return. Beyron called me . . . on September 2, 2009 asking me to again confirm what had taken place on August 31, 2009. Beyron then . . . plac[ed] me on speaker phone so that Mark [Best, a Metro Ford sales representative] and [Plaintiff] could listen in. . . . My husband and I have done business with Metro Ford for ten years or more. During this period, we have purchased a total of five vehicles, not to mention the ten or more referrals that we made that turned out to be purchases."

Bowens Aff., attached as Exh. 2 to Def.'s MSJ [23-2], at 3-4.

Although these two accounts differ in the details of what was said in the customer interaction at issue, the customer was unhappy and lodged a complaint. The Court has no knowledge of whether Metro Ford has an objective standard in the form of a policy regarding sales representatives' interactions with customers, though Plaintiff does acknowledge in his deposition that Metro Ford employees were expected to keep customers happy, Pl.'s Depo. [23-1] at 77-78, and it is reasonable to assume, as Defendant maintains, that customer interaction is a key component of success in the car sales industry. If a sales representative has an interaction with a customer that leads to a complaint by a longstanding customer, Metro Ford could reasonably assume that would endanger its sales. Accordingly, Metro Ford's articulated reason

for the termination is legitimate and non-discriminatory. Thus, the burden would next shift back to Plaintiff to show pretext.

### 3. Pretext

Again assuming, *arguendo*, that Plaintiff has made a prima facie case of race discrimination and Defendant has sufficiently rebutted this presumption by offering a legitimate, non-discriminatory reason for Plaintiff's termination, the Court must next examine whether the pretext prong of the test is met. Defendant contends Plaintiff has presented no evidence of pretext.

Plaintiff's account of the incident that led to his termination differs from Metro Ford's account of the incident. However, "simply disputing the underlying facts of an employer's decision is not sufficient to create an issue of pretext." *LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 391 (5th Cir. 2007). The "existence of competing evidence about the objective correctness of a fact underlying a defendant's proffered explanation does not in itself make reasonable an inference that the defendant was not truly motivated by its proffered justification." *Little v. Republic Refining Co.*, 924 F.2d 93, 97 (5th Cir. 1991) (internal citation omitted).

Plaintiff testified in his deposition that an African-American sales associate, Hubert Miller, had a heated dispute with another customer, during which time Miller was "cussing and hollering." Pl.'s Depo. [23–1] at 55, 82. Plaintiff testified that Miller was merely reprimanded, not discharged, for his conduct. *Id.* at 56. Even if Plaintiff's testimony on this matter can be categorized as a disparate treatment theory to show pretext by alluding to Miller as a comparator, Plaintiff has failed to present substantial evidence to demonstrate that a material question of fact

existed as to whether Defendant's reason for terminating him was pretextual. The single piece of evidence this Court has before it on this matter is the deposition testimony by Plaintiff.[3]

Thus, Plaintiff has presented little, if any, "competent evidence that the presumptively valid reasons for [his termination] were in fact a coverup for a racially discriminatory decision." *See McDonnell Douglas*, 411 U.S. at 805, 93 S. Ct. 1817.[4] "Absent countervailing evidence, the trier of fact must accept the defendant's explanation as the real reason for the discharge." *Timmerman v. IAS Claim Servs. Inc.*, 138 F.3d 952, 1998 WL 110078, at *4 (5th Cir. 1998) (quoting *Guthrie v. Tifco Indus.*, 941 F.2d 374, 378 (5th Cir. 1991)). *See also Stewart*, 121 F. App'x at 42–43 (holding that the plaintiff's failure to respond to the motion for summary judgment meant that the plaintiff had failed to present evidence to rebut the defendant's assertion).[5] Because Plaintiff has not satisfied the pretext prong, this Court accepts Metro Ford's proffered reason for Plaintiff's termination.

---

[3] Plaintiff does not allege a racially hostile work environment claim. However, Defendant addresses such a claim in its motion and memorandum in support, acknowledging that "[Plaintiff's] testimony may be construed to raise such a claim." Def.'s Mem. Supp. MSJ [24] at 9–10. In Plaintiff's deposition, he points to two specific incidents in which one of his supervisors, Kenny Johnson, called him "boy . . . in front of everybody," but maintains that Johnson never did so to any of Plaintiff's African-American coworkers. Pl.'s Depo. [23–1] at 60, 81. Plaintiff further testifies that Johnson generally caused problems for "many [coworkers], many white and black." *Id.* at 66, 81. Plaintiff states that he was terminated by Beyron Erby, Metro Ford's General Manager, who had "the last say-so." *Id.* at 62, 77. It is undisputed that Plaintiff has no claim that Erby mistreated him because of his race. *See id.* at 73. If Plaintiff had established that Johnson had leverage over Erby, who made the ultimate firing decision, Plaintiff could have argued Johnson's conduct implicated Erby and thus created a genuine issue of material fact. *See Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 226–27 (5th Cir. 2000). However, Plaintiff has made no such argument to link the two together and create a genuine issue of material fact.

The Court notes that Johnson's comments may at most be characterized as stray remarks. "[C]omments are evidence of discrimination only if they are 1) related to the protected class of persons of which the plaintiff is a member; 2) proximate in time to the complained-of adverse employment decision; 3) made by an individual with authority over the employment decision at issue; and 4) related to the employment decision at issue. Comments that do not meet these criteria are considered stray remarks . . . ." *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 380 (5th Cir. 2010).

[4] Plaintiff testified in his deposition that he was not aware of any other employees of another race similarly situated who were treated more favorably than Plaintiff.

[5] Plaintiff also has not introduced a mixed-motives theory; thus, this Court will not introduce it here. In the Fifth Circuit, it appears to be incumbent upon a plaintiff to actually raise mixed-motive arguments in order to have them considered at the summary judgment stage. *See Septimus v. Univ. of Houston*, 399 F.3d 601, 607 n.7

11

Plaintiff has, at best, presented a case of unfairness directed against him related to the customer incident at issue. However, "Title VII does not protect an employee against unfair employment decisions; instead, it protects against employment decisions based upon discriminatory animus." *Jones v. Overnite Transp. Co.*, 212 F. App'x 268, at *5 (5th Cir. 2006) (citing *Nieto v. L & H Packing Co.*, 108 F.3d 621, 624 (5th Cir. 1997)). Metro Ford may very well have made an incorrect decision when it terminated Plaintiff, but Plaintiff has failed to demonstrate racial animus. *See Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1995). For the foregoing reasons, the Court finds that summary judgment is proper.

### D. Conclusion

In sum, Defendant's motion to dismiss [28] brought pursuant to Rule 37 of the Federal Rules of Civil Procedure shall be DENIED. Defendant's motion for summary judgment [23] will be GRANTED, as the Court finds there are no genuine issues of material fact as to Plaintiff's claims and Defendant is entitled to judgment as a matter of law on all claims.

A separate order in accordance with this opinion shall issue this day.

This, the 23 day of January, 2012.

*[signature]*

SENIOR JUDGE

---

(5th Cir. 2005) (refusing to consider whether the Supreme Court's decision in *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 123 S. Ct. 2148, 156 L. Ed. 2d 84 (2003), or the Fifth Circuit's decision in *Rachid*, 376 F.3d 305, would affect the case because the parties relied on pretext rather than mixed motive); *Strong v. Univ. HealthCare Sys., L.L.C.*, 482 F.3d 802, 805 (5th Cir. 2007) (applying "but for" causation standard on summary judgment in retaliation case where plaintiff had relied solely on a pretext theory); *Vaughner v. Pulito*, 804 F.2d 873, 877 n.2 (5th Cir. 1986) ("If a party fails to assert a legal reason why summary judgment should not be granted, that ground is waived and cannot be considered or raised on appeal") (emphasis added); *Arey v. Watkins*, No. 09-10999, 2010 WL 2764731, at *3 n.2 (July 14, 2010) (citing *Vaughner*, 804 F.2d at 877 n.2 and finding that the plaintiff's mixed-motive theory was "waived" because the plaintiff "did not raise such a theory in the district court"). However, even if Plaintiff had raised the mixed-motive alternative argument, the Court finds that Plaintiff has failed to provide "substantial evidence supporting a conclusion that both a legitimate and an illegitimate (i.e, more than one) motive may have played a role in the challenged employment action." *Smith v. Xerox Corp.*, 602 F.3d 320, 333 (5th Cir. 2010).